## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN LEWIS,<br><br>              *Plaintiff*,<br><br>      v.<br><br>EXELON CORPORATION, *et al.*,<br><br>              *Defendants*. | No. 21-cv-3299 (DLF) |

## MEMORANDUM OPINION AND ORDER

Kevin Lewis brings this action against his former employers, Exelon Corporation and Potomac Electric Power Company (Pepco), alleging that they discriminated and retaliated against him because of his disability and use of medical leave.  Before the Court is the defendants' Partial Motion to Dismiss, Dkt. 3.  For the reasons that follow, the Court will grant the motion.

## I.      BACKGROUND[1]

Kevin Lewis began working for Exelon and Pepco in February 2020 as a Work Week Manager.  Compl. ¶ 9, Dkt. 1-1.  He suffers from asthma, a "disability [that] substantially limit[s] a major life activity."  *Id.* ¶¶ 12, 20.  Starting in March 2020, he worked remotely from Chesapeake, Virginia due to the COVID-19 pandemic.  *Id.* ¶ 11.  Allegedly, in December 2020, Lewis contracted COVID-19 and has continued to suffer from its effects, *id.* ¶ 13, exacerbated by his asthma, *id.* ¶ 12.  Sometimes, he experienced "significant asthma symptoms" during work hours that necessitated his use of medical leave.  *Id.* ¶ 14.  He told the defendants when he had to

---

[1] On a Rule 12(b)(6) motion, the Court assumes the truth of material factual allegations in the complaint.  *See Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

take medical leave, and he never exhausted his leave.  *Id.*  Lewis took three days of medical leave starting on April 28, 2021 after an "extremely bad asthma attack."  *Id.* ¶ 15.  He alleges that when he returned, his supervisor, Steven Omijuanfo, began to criticize his work.  *Id.* ¶ 16. Lewis claims that Omijaunfo directed him to send an email at the end of each day listing the work that he had performed—a task that none of his peers were required to do.  *Id.*  Further, Omijuanfo accused him of "failing to perform work" and initiated an investigation against him. *Id*. ¶ 17.  Lewis asked if these issues should be brought to Human Resources, but Omijuanfo continued to "micromanag[e]" him and "accuse [him] of not working,"  despite the fact that Lewis claims he was a "high performer" with "some of the highest production numbers in his Department."  *Id.* ¶ 17.

On June 25, 2021, Lewis was fired, allegedly "because of his disability and in retaliation for using medical leave due to his disability."  *Id*. ¶ 18–19.  He filed suit in D.C. Superior Court on November 2, 2021, bringing claims under the District of Columbia Human Rights Act (DCHRA), D.C. Code § 2-1401.1, *et seq*, the District of Columbia Family and Medical Leave Act (DCFMLA), D.C. Code § 32-501, *et seq*, and the federal Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq*.  Compl. ¶ 4.  Following removal to this Court, *see* Notice of Removal, Dkt. 1, the defendants filed a partial motion to dismiss three of the four counts.  *See* Mot. to Dismiss at 1.

## II.    LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a Rule 12(b)(6) motion, the court may generally consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.    ANALYSIS

The defendants move to dismiss Lewis's claims under the DCHRA, arguing that he has not sufficiently alleged a connection between his termination and his disability and that he has not stated a hostile work environment claim.  *See* Mot. to Dismiss at 3–6.  They also seek dismissal of his DCFMLA claim on the ground that as a remote employee, he is not covered under the Act.  *Id.* at 7.  The Court will address each argument in turn.

### A.    Disability Discrimination

In Count I of his complaint, Lewis alleges that he faced disability discrimination under the DCHRA.  Compl. ¶¶ 23–26.  The DCHRA forbids employers from "discharg[ing]" an employee "wholly or partially for a discriminatory reason" based on his "actual or perceived . . . disability."  D.C. Code § 2–1402.11(a).  To state a claim for disability discrimination, a plaintiff must allege that he was disabled as defined by the statute, that he was qualified for the relevant position with or without a reasonable accommodation, and that he suffered an adverse employment action because of his disability.  *Ingram v. D.C. Child & Fam. Servs. Agency*, 394 F. Supp. 3d 119, 126 (D.D.C. 2019); *Chang v. Institute for Public-Private P'ships, Inc.*, 846 A.2d 318, 324 (D.C. 2004).  The defendants assume for the purposes of this motion that Lewis's asthma qualifies as a disability and do not address his qualifications, *see* Mot. to Dismiss at 3, and they agree that his termination is an adverse employment action, *see id.*  But they contend that the alleged facts do not give rise to the inference that he was fired due to his disability.  *Id.*

The Court agrees.  Lewis's claim that the defendants fired him because of his disability is a conclusory allegation unsupported by the facts in the complaint.  According to the complaint, Lewis took medical leave for his asthma numerous times throughout his employment, and his supervisor began to criticize his performance and accuse him of failing to do his work after one

of those leaves.  Compl. ¶¶ 14, 16–17.  Nearly two months after that leave, he was fired.  *Id.* ¶ 18.  Absent from the complaint is any allegation that Lewis was criticized for taking leave or was questioned about how his leave affected his work output, let alone that he ever received negative comments about his *asthma*.  *See Abebio v. G4S Gov't Sols., Inc.*, 72 F. Supp. 3d 254, 259 (D.D.C. 2014) (rejecting a DCHRA family responsibilities discrimination claim where the plaintiff did not allege that her supervisor discussed the effect of her childcare duties on her work schedule or said that they contributed to her termination); *Miles v. Univ. of D.C.*, No. 12-cv-378, 2013 WL 5817657, at *13 (D.D.C. Oct. 30, 2013) (allowing a DCHRA family responsibilities claim to proceed where the plaintiff, among other things, alleged that a supervisor "appear[ed] to equate [her] maternity leave with" the abandonment of her work).  Indeed, Lewis does not explicitly state that the defendants even knew about his disability—he alleges only that he told them when medical leave was "necessary."  Compl. ¶ 14.  Given that Lewis worked remotely for most of his employment, *see id.* ¶¶ 9, 11, it is not clear that the defendants were aware that he took medical leave because of a disability.  *See McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 153 (D.D.C. 2014) (dismissing a DCHRA discrimination claim in part because the defendant's knowledge of the plaintiff's religious convictions "remain[ed] hazy on the face of the Complaint").

Even if the alleged facts support the plausible inference that Lewis was fired because he took medical leave, the Court cannot, without more, make the inferential leap that the decision was also motivated by his underlying disability.  *See Slate v. Pub. Def. Serv. for D.C.*, 31 F. Supp. 3d 277, 298 (D.D.C. 2014) (dismissing gender discrimination case where the plaintiff alleged that he was suspended in retaliation for his protected EEO activity, as opposed to his gender).  There are no facts alleged in the complaint that support a causal inference that Lewis's

termination was due, in whole or in part, to his disability.  Thus, the Court will dismiss his

DCHRA discrimination claim.[2]

### B.        Hostile Work Environment

In Count II of his complaint, Lewis asserts a hostile work environment claim under the

DCHRA.  Compl. ¶¶ 27–30.  To prevail on such a claim, a plaintiff must show that he suffered

"discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter

the conditions of the victim's employment and create an abusive working environment."  *Baloch*

*v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510

U.S. 17, 21 (1993)); *see Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 86 (D.D.C. 2014)

(explaining that the legal standard under the DCHRA is substantially similar to the standard

under Title VII).  To assess whether a hostile work environment exists, courts "look[] to the

totality of the circumstances, including the frequency of the discriminatory conduct, its severity,

its offensiveness, and whether it interferes with an employee's work performance."  *Baloch*, 550

F.3d at 1201.  "The Supreme Court has made it clear that conduct must be extreme to amount to

a change in the terms and conditions of employment," *George v. Leavitt*, 407 F.3d 405, 416

(D.C. Cir. 2005) (internal quotation marks and citation omitted), such that "simple teasing,

---

[2] Lewis argues that his claim should proceed because "proving discrimination under the DCHRA is easier than under Title VII and the ADA."  Pl.'s Opp'n at 5, Dkt. 9.  Not so.  "DCHRA and federal discrimination claims are analyzed under the same legal standard."  *Slate*, 31 F. Supp. 3d at 290 n.3.  And the Court finds that Lewis has not alleged facts sufficient to support a plausible inference that his termination was caused, even "partially," by his disability.  *See* D.C. Code § 2–1402.11(a).

offhand comments, and isolated incidents . . . will not" be sufficient. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

According to Lewis, his supervisor's behavior was "severe and pervasive," Compl. ¶ 17, but this is a conclusory allegation that the Court need not take as true. *Iqbal*, 556 U.S. at 678. And the only alleged facts that support his hostile work environment claim are that Omijuanfo "criticized [his] work," directed him to send daily emails with a summary of his work, "accused [him] of failing to perform work," "micromanaged" him, and started an investigation against him. Compl. ¶¶ 16–17. Taken together, in the light most favorable to Lewis, these alleged facts do not show a "severe and pervasive pattern of harassment," *Outlaw v. Johnson*, 49 F. Supp. 3d 88, 92 (D.D.C. 2014), that "create[d] an abusive working environment," *Baloch*, 550 F.3d at 1201 (quoting *Harris*, 510 U.S. at 21).

First, criticisms of an employee's work product "are the kinds of normal strains that can occur in any office setting." *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 56 (D.D.C. 2004); *see also Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("[T]he removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management [cannot] be characterized as sufficiently intimidating or offensive in an ordinary workplace context."). That Lewis, unlike his co-workers, had to send daily work summary emails was a "minor inconvenience at best, not the type of behavior that alters the conditions of the victim's employment." *Briscoe*, 61 F. Supp. 3d at 88 (internal quotation marks and alteration omitted); *see also Truesdale v. District of Columbia*, No. 21-cv-315, 2022 WL 951379, at *5 (D.D.C. Mar. 30, 2022) ("[E]ven accepting as true that [the plaintiff] was subjected to more scrutiny than other employees . . . there is no indication that [this] interfered with her ability to perform her job or was sufficiently severe to support a hostile work

environment claim.").  Finally, while Lewis claims that he was investigated, he provides no details about the investigation or what it entailed.  "Absent more information regarding the nature and extent of the [investigation]," the Court cannot find that it helped create an abusive work environment. *Briscoe*, 61 F. Supp. 3d at 87.

In sum, the allegations fail to state a hostile work environment claim.  Accordingly, the Court will dismiss Count II of the complaint.

### C.      Retaliation and Interference with Rights under DCFMLA

In Count III of his complaint, Lewis asserts claims of retaliation and interference with rights under the DCFMLA.  Compl. ¶¶ 31–39.  But as an employee who worked outside of D.C., Lewis cannot validly state a claim under the DCFMLA.  To be covered under the statute, an employee must work *within the District* in one of two ways.  First, an employee qualifies "if the person spends more than fifty percent (50%) of his or her work-time working for the employer in the District, if the person is employed by the employer in more than one (1) location."  D.C. Mun. Regs., tit. 4, § 1603.5.  Alternatively, an employee works within the District if he or she "is based in the District of Columbia and regularly spends a substantial part of his or her time working for the employer in the District of Columbia and does not spend more than fifty percent (50%) of his or her work-time working for the employer in any particular state."  *Id*.  Lewis worked remotely from Virginia since the COVID-19 pandemic began in March 2020, *see* Compl. ¶ 11, so he is not an eligible employee.  *See Border v. Nat'l Real Estate Advisors, LLC*, 453 F. Supp. 3d 249, 253 (D.D.C. 2020) ("Plaintiff spent the majority of her work-time in Florida, so she is not an eligible employee under the DCFMLA.").

True, the D.C. Coronavirus Support Emergency Act, D.C. Act 23-326, temporarily amended the DCFMLA to provide COVID-19-related leave.  Pl.'s Opp'n at 12–13.  But in

arguing that the Act extended DCFMLA coverage to remote employees during the health emergency, Lewis misreads the D.C. Office of Human Rights' guidance. *Cf. id.* at 13; Pl.'s Opp'n, Ex. C (OHR Enforcement Guidance 21-001), Dkt. 9-1. In fact, the guidance makes clear that the Act amends the definition of eligible "employee" *only* for the new COVID-19 leave. *See* Pl.'s Opp'n, Ex. C at 15 ("No Effect on Traditional Family and Medical Leave: [The Act] does not change the definitions of employer and employee, or eligibility for traditional family and medical leave entitlements…"). Lewis took time off for his asthma, not COVID-19, so he used traditional medical leave. Compl. ¶ 15. Lewis points to an answer in the guidance's FAQ section that suggests that an "employee remains covered by the DCFMLA even if the employee is working from home outside of the District of Columbia during a declaration of health emergency," Pl.'s Opp'n, Ex. C at 17. But the question that this statement answers refers only to the DCFMLA's "new provisions"—that is, the COVID-19 leave provisions, not traditional medical leave. *Id.* The guidance thus implies that a remote employee is covered by the DCFMLA *only* for COVID-19 leave. This reading is reinforced by the fact that the guidance also states that the Act does not alter the definition of "employee" for traditional leave.

Because Lewis is a remote employee, he cannot bring claims under the DCFMLA, and therefore, the Court will dismiss Count III.

Accordingly, it is

**ORDERED** that the defendants' Partial Motion to Dismiss, Dkt. 3, is **GRANTED**. It is further

**ORDERED** that Counts I, II, and III are **DISMISSED WITHOUT PREJUDICE**. It is further

**ORDERED** that the defendants shall file an answer to the plaintiff's complaint on or before May 31, 2022.

**SO ORDERED**.

_____
DABNEY L. FRIEDRICH
United States District Judge

May 17, 2022